IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VENVER, S.A. and<br>AMERICAS COIL TUBING, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>GEFCO, INC. and<br>ASTEC INDUSTRIES, INC.,<br><br>    Defendants. | Case No. CIV-18-790-SLP |

**O R D E R**

Before the Court are the following Motions: (1) Plaintiffs' Motion for Partial Summary Judgment as to Venver's Capacity to Sue [Doc. No. 197]; (2) Defendant GEFCO Inc.'s Motion for Summary Judgment – only as to the issue of Venver's claim for breach of express warranty [Doc. Nos. 212, 214] (argument at 20-23); and (3) Defendant GEFCO, Inc.'s Motion for Judgment on the Pleadings Regarding Venver's Express Warranty Claim [Doc. No. 147].[1]  These matters are fully briefed.  For the reasons that follow Plaintiffs' Motion for Partial Summary Judgment is GRANTED.  Defendant GEFCO Inc.'s Motion for Summary Judgment is DENIED IN PART[2] and Defendant GEFCO Inc.'s Motion for Judgment on the Pleadings is DENIED.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

[2] The Court will address the remaining issues raised in Defendant's Motion for Summary Judgment by separate order.

**I.     Introduction**

This action arises from the manufacture, purchase and sale of a VR-500 drilling rig (the Rig). The Rig is alleged to be nonconforming to contract specifications and the parties' disputes arise from this alleged nonconformity.

Defendant, GEFCO, Inc. (GEFCO), is a Tennessee corporation. GEFCO manufactured and sold the Rig.

Plaintiff, Americas Coil Tubing, LLC (ACT), a Texas limited liability company, purchased the Rig from GEFCO for a purchase price in excess of eight million dollars. The primary issue before the Court requires a determination as to the capacity in which ACT purchased the Rig.

Plaintiff, Venver, S.A., an Argentine company (Venver), operates oil & gas drilling rigs in Argentina. Venver negotiated with GEFCO for months regarding the manufacture and specification of the Rig. Venver intended to use the Rig to service a five-year drilling contract with a major Argentine exploration company. *See* Joint Status Report [Doc. No. 31] (JSR), ¶ 1(a). Venver alleges that ACT purchased the Rig "as agent on behalf of, and for the express benefit of, Venver." *See* Third Am. Compl. [Doc. No. 233], ¶ 10. And Venver further alleges that GEFCO knew that ACT purchased the Rig "on behalf of and for the benefit of Venver." *Id.*, ¶ 11. Thus, Plaintiffs moves for partial summary judgment contending Venver has the right to directly enforce the contract for the purchase of the Rig from GEFCO under agency law or as a third-party beneficiary of that contract.

In responding to Plaintiffs' Motion, GEFCO contests that ACT entered into the purchase contract as agent for Venver. GEFCO primarily argues that agency law is not

relevant and directs a substantial portion of its briefing to the express warranty provision of the purchase contract. *See, e.g.*, Def.'s Resp. at 22 ("... Plaintiffs' motion totally misses the point. Plaintiffs conflate agency law with whether Venver falls within the scope of the express warranty GEFCO sculpted."); *see also id.* at 6 ("Plaintiff's motion misses the point. Regardless of whether a principal can sue for contracts entered into by an agent, it does not change that a seller can 'sculpt' an express warranty however it wishes.").[3]

GEFCO argues that under the express warranty terms, only the "first purchaser" can enforce the express warranty. According to GEFCO, ACT is clearly the first purchaser and, therefore, only ACT, not Venver, has the right to enforce the express warranty. GEFCO has also raised this issue in its Motion for Judgment on the Pleadings and in its Motion for Summary Judgment. In the interests of judicial efficiency, the Court addresses the issue in this Order.

## II.   **Governing Standard**

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). In deciding whether summary judgment is proper, the court does not weigh the evidence, but rather determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Roberts v. Jackson*

---

[3] To the extent Venver seeks to enforce other terms of the purchase contract, GEFCO does not address those terms. GEFCO's focus is narrow, concentrating on the express warranty provision.

*Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). If there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, the issue is "genuine." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "Material" issues of fact include those that, under the substantive law, are essential to the proper disposition of the claim. *Id.* The Court construes the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

### III. <u>Undisputed Material Facts</u>[4]

The purchase contract (the Contract) for the Rig is dated August 1, 2013. *See* Contract [Doc. No. 197-1]. It is undisputed that ACT purchased the Rig. Notably, well in advance of summary judgment briefing, the parties stipulated to this fact. *See* JSR, Stipulated Facts [Doc. No. 31-2], ¶ 6 ("Through a written agreement dated August 1, 2013, GEFCO agreed to sell to ACT a 'VR-500' top head drilling rig and related equipment, for "$8,451,509.00."). ACT is a Texas limited liability company and its sole owner and sole employee is Humberto "Bert" Leniek.

---

[4] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c). The Court has considered both the parties' factual submissions made in conjunction with Plaintiffs' Motion for Partial Summary Judgment and those made in conjunction with GEFCO's Motion for Summary Judgment as to the express warranty issue. However, because the factual record is duplicative, the Court's citations focus primarily on the factual submissions made in conjunction with Plaintiffs' Motion for Partial Summary Judgment.

The Contract includes the term "SELLER" and defines SELLER as "the George E. Failing Company." *See id*. at 17.[5]  For purposes of the pending Motions, it is undisputed that GEFCO is the SELLER and manufactured and sold the Rig.

The Contract is signed by officers of GEFCO and Matias Forster.  *See* Contract [Doc. No. 197-1] at 16.  Mr. Forster signed the Contract as "purchasing agent."  *See id*.  At all relevant times, Matias Forster served as one of the three owners of Venver.  Matias Forster is not, and never has been, an officer or employee of ACT.  Mr. Leniek, the sole officer/employee of ACT, did not sign the Contract.

The Contract includes a warranty provision which reads:

> The Warranty extends only to the first PURCHASER and becomes effective and remains in effect, only when invoices for products are paid in accordance with the stated sales terms.  Warranty is extended to VenVer from Americas Coil Tubing LLC.

*Id*. at 17.

The term "PURCHASER" is left undefined in the Contract.  ACT is referenced twice in the Contract.  On the first page of the Contract the heading "Company:" appears and following that heading, the company name "American Coil Tubing LLC" appears.  The other reference to ACT is in the warranty provision set forth above.

---

[5] The Contract reads in pertinent part:

> Products shall mean and include new equipment consisting of portable drilling rigs and associated equipment manufactured by the George E. Failing Company hereinafter referred to as SELLER.

*Id*.

As between ACT and Venver, there is no dispute that ACT purchased the Rig as a purchasing agent for Venver. Throughout his deposition, Mr. Leniek repeatedly stated that he purchased the Rig as agent for Venver. *See, e.g.*, Leniek Dep. [Doc. No. 197-4] at 50-51, 55-57, 93-94, 114-15, 220-27. Similarly, Matias Forster and Enrique Forster, two of the three owners of Venver, also confirmed this. *See* M. Forster Dep., Vol. 2 [Doc. No. 197-3] at 62-65, 101-102; E. Forster Dep. [Doc. No. 197-19] at 224-29.[6]

GEFCO contests this agency relationship. In doing so, GEFCO does not identify any evidence to demonstrate that GEFCO did not know about the relationship between Venver and ACT.

Instead, GEFCO points to a litany of documents and deposition testimony to show that ACT purchased the Rig. As stated, not only is this issue not in dispute, but is a stipulation of the parties.[7]

It is also undisputed that for an extended period of time prior to the signing of the Contract, GEFCO negotiated with Venver regarding the design and capabilities of the Rig. ACT was not involved in any of those negotiations. *See, e.g.*, Pl.'s Mot., Exhibits 5-7 [Doc. Nos. 197-5 - 197-7].

---

[6] GEFCO "disputes the credibility" of the testimony of these witnesses. *See* Def.'s Resp. at 11, ¶ 17. But a blanket challenge to credibility, without more, is unavailing. *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004) ("Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion."); *see also Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1223 n.3 (10th Cir. 2017) (nonmoving party "must do more than merely assert that the jury might disbelieve the testimony" presented by the moving party; rather, nonmovant must present affirmative evidence to contradict the testimony).

[7] For this reason, it is concerning that GEFCO has expended considerable resources on this issue and similarly devoted substantial argument to the issue.

However, approximately six weeks before executing the Contract, GEFCO and Venver agreed that payment of the Rig could not be made directly by Venver. Although the reasons for this are disputed, the parties do not dispute that ultimately, those reasons stemmed from the fact that Venver is a foreign company.

As a result, Venver advised GEFCO that Venver would "do the negotiation and purchase through Americas Coil LLC of USA." *See* email [Doc. No. 197-8 at 8]. And GEFCO, in turn, acknowledged that "Venver will buy the equipment through the Americas Coil LLC . . . ." *See* email [Doc. No. 197-8 at 5] (GEFCO referencing an email received from Matias Forster of Venver "confirming what *they* will purchase" and further stating "***Venver will buy the equipment through the Americas Coil LLC*** an Argentinian company that have made investments and operations (Coil Tubing applications, Houston) in Texas along with Venver some years ago." (emphasis added)). A few days later, GEFCO asked its South American agent: "Will Venver let us invoice American Coil and sell them the rig?" *See* email [Doc. No. 197-8 at 3]. And GEFCO's agent responded: "I just spoke by phone with Enrique Forster and that's how they will do the payment." *See* email [Doc. No. 197-8 at 1].

Consistent with these email exchanges, the parties then structured a deal pursuant to which ACT would directly purchase the Rig from GEFCO. Although ACT made the purchase, Venver funded it. To do so, Venver obtained a loan from an Argentine bank. ACT then opened an American bank account, in its own name, that required Venver's approval for disbursements. Venver transferred its loan proceeds to the American bank

7

account and ACT, upon Venver's instructions, used those proceeds to pay GEFCO for the Rig. *See* Pl.'s Mot., ¶ 5, n. 5 (citing E. Forster Dep. and Leniek Dep. excerpts).

## IV. Discussion

### A. Agency Relationship Between Venver and ACT

In this diversity case, the Court applies the substantive law of the forum state, Oklahoma. *Talley v. Time, Inc*., 923 F.3d 878, 883 n. 2 (10th Cir. 2019).[8] Plaintiffs bear the burden of proving an agency relationship exists between Venver and ACT. *See Enter. Mgmt. Consultants, Inc. v. State of Okla. ex rel. Okla. Tax Comm'n*, 768 P.2d 359, 362 (Okla. 1988). "[A] n agency relationship generally exists if two parties agree that one is to act for the other." *Clark v. Colbert*, 895 F.3d 1258, 1266 (10th Cir. 2018) (internal quotation marks and citation omitted). The principal's "right to control" the conduct and activities of the agent "is the essential factor in any agency relationship." *Id*. (internal quotation marks and citation omitted).

Here, the undisputed factual record demonstrates that Venver and ACT agreed that ACT would purchase the Rig on behalf of Venver. Plaintiffs have produced witness testimony and exhibits that demonstrate ACT's role was to serve as a purchasing agent on Venver's behalf. Venver negotiated the deal with respect to the specifications and design of the Rig and maintained control over the terms and conditions of the purchase of the Rig. The record further shows that Venver funded ACT's purchase of the Rig and that all parties

---

[8] The parties appear to agree that Oklahoma law governs the analysis as they principally rely on Oklahoma law in their respective briefing submissions. Additionally, the Contract includes a choice of law provision and states that Oklahoma law governs. *See* Contract [Doc. No. 197-1] at 16.

knew that ACT would be reselling the Rig to Venver. The record amply demonstrates that ACT served as purchasing agent to Venver.

GEFCO makes two arguments to defeat this finding. First, GEFCO argues "Plaintiffs identify no contract between Venver and ACT evidencing an agency relationship. Def.'s Resp. at 26. But GEFCO points to no law which mandates that a contract must exist to create an agency relationship. And, as set forth, such a stance is contrary to Oklahoma law which focuses not on the existence of a written agreement, but the words and/or conduct of the parties.

Second, GEFCO argues that Venver has failed to identify "any *express* manifestation by Venver that it intended for ACT to be its agent." *Id*. (emphasis in original). The Court is perplexed by this argument. As set forth, the factual record makes clear that ACT purchased the Rig on behalf of Venver with GEFCO's full knowledge of the relationship. Indeed, in its Answer, GEFCO admits that it was "aware ACT said it intended to sell the rig to Venver." Answer [Doc. No. 73], ¶ 10. Moreover, the evidence GEFCO cites in responding to Plaintiffs' Motion further establishes GEFCO's knowledge about the relationship between Venver and ACT and that Venver maintained control over the transaction. *See, e.g.,* Resp. at 13 ("Will Venver let us [GEFCO] invoice American Coil and sell them the rig? (citing Ex. 43)).

GEFCO's evidence to disprove this agency relationship hinges almost entirely on an email from Enrique Forster, one of the owners of Venver, wherein Mr. Forster assured GEFCO that ACT was not "associated with" Venver. *See* emails dated June 17 and June 19, 2019 [Doc. No. 225-43] at 7 (GEFCO 3637); *see also* Leniek Dep. [Doc. No. 197-3] at

9

74. But in context, it is clear that such assurances were not directed to whether ACT was acting as purchasing agent on Venver's behalf, but whether the two companies were affiliated business entities.[9] No reasonable jury could find otherwise. Moreover, the record is clear that GEFCO knew that Venver's purchase of the Rig was structured through ACT as a purchasing agent. Therefore, under Oklahoma law, the Contract necessarily is between GEFCO and Venver. *See Shebester v. Triple Crown Insurers*, 826 P.2d 603, 609 (Okla. 1992) ("[A] contract made with a known agent for a disclosed principal is a contract with the principal alone.").

In sum, the Court finds, on the undisputed material facts, that as a matter of law, ACT served as Venver's purchasing agent. Venver, therefore, is entitled to enforce the terms of the Contract.[10] For the reasons set forth below, Venver's enforcement rights extend to the express warranty provision.

      **B.**      **First Purchaser Limitation in Express Warranty**

In responding to Plaintiffs' Motion, GEFCO argues that Plaintiffs' reliance on agency law "totally misses the point" as to "whether Venver falls within the scope of the express warranty GEFCO sculpted." Resp. [Doc. No. 225] at 22.[11] GEFCO argues it

---

[9] For this reason, the Court readily rejects GEFCO's estoppel argument. There is no evidence that GEFCO was unaware that Venver was the Rig's intended purchaser and that Venver utilized ACT to serve as the purchasing agent.

[10] Based on this finding, the Court deems it unnecessary to address the third-party beneficiary issue.

[11] As the Court has previously noted, GEFCO's argument fails to address other provisions of the Contract that Venver is entitled to enforce based on its agency relationship with ACT. *See* supra, n. 3. The Court limits its analysis, therefore, to the express warranty provision.

"sculpted" an express warranty limited to the "first purchaser." GEFCO's argument is unavailing. Under agency law, Venver is the "first purchaser." *See* Okla. Stat. tit. 12(A), § 1-103(b) ("Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including . . . the law relative to capacity to contract, principal and agent, . . . shall supplement its provisions."); *Shebester v. Triple Crown Insurers*, 826 P.2d at 606 n. 8 ("Oklahoma law does not regard Article 9 as a sweeping repeal of all preexisting common-law rights" and recognizing principles of "common-law agency" to have survived).

Even if agency law were not applicable, the Court finds that a proper interpretation of the Contract extends the express warranty to ACT.[12] According to GEFCO, use of the term "purchaser" in the Contract is unambiguous and, applying that term, ACT is indisputably the purchaser. GEFCO maintains that the Contract extends the express warranty only to the "first purchaser" and Venver, therefore, cannot enforce the express warranty provision of the Contract.

Under Oklahoma law, whether a contract term is ambiguous, and the construction of an unambiguous contract term, are questions of law for the court. *Ahlschlager v. Lawton School Dist.*, 242 P.3d 509, 515 (Okla. 2010). "A contract is ambiguous if it is reasonably susceptible to at least two different constructions such that reasonably intelligent [persons] on reading the contract would honestly differ as to its meaning." *Otis Elevator Co. v.*

---

[12] Because GEFCO raises the issue and has filed dispositive motions addressing the same argument, the Court finds it proper to resolve the issue here, but only in the alternative to its agency findings.

11

*Midland Red Oak Realty, Inc*. 483 F.3d 1095, 1102 (10th Cir. 2007) (applying Oklahoma law; cleaned up).  The fact that the parties disagree as to the interpretation of a contract or press for different constructions does not, standing alone, make a contract ambiguous.  *Id*.

The determination of whether a contract is ambiguous, is to be made only after applying the pertinent rules of construction.  *See, e.g., Morgan v. Provident Life & Accident Ins. Co*., No. CIV-20-180-D, 2023 WL 2731086 at *6 (W.D. Okla. Mar. 30, 2023) (citing *Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 376-77 (Okla. 1991); *State ex rel. Comm'rs of Land Office v. Butler*, 753 P.2d 1334, 133-37 (Okla. 1987)).  "[T]he paramount objective of contract interpretation is to ascertain and give effect to the intention of the parties." *Husky Ventures, Inc. v. B55 Invs., Ltd*., 911 F.3d 1000, 1015 (10th Cir. 2018) (citing *Murphy v. Earp*, 382 P.2d 731, 733 (Okla. 1963)).

"The Oklahoma statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*id*. § 163)." *Morgan*, 2023 WL 2731086, at *6.

In arguing that the Contract is unambiguous, GEFCO narrowly focuses on a single sentence contained in the express warranty provision, not that provision as a whole or the Contract as a whole.

The express warranty provision, *as a whole*, reads:

> The Warranty *extends* only to the first PURCHASER and becomes effective and remains in effect, only when invoices for products are paid in accordance with the stated sales terms.  Warranty is *extended* to VenVer from Americas Coil Tubing LLC.

See Contract [Doc. No. 197-1] at17 (emphasis added). The only logical reading of this provision is that it is GEFCO's warranty that is extended to Venver, not, as GEFCO contends, that ACT separately created a warranty of its own to Venver in a form contract created by GEFCO.  Repetition of use of the word "extend" supports this conclusion.

But even if the second sentence of the warranty provision were deemed ambiguous, i.e., under one construction ACT extended the warranty to Venver and under another construction GEFCO extended the warranty to Venver, the Court resolves the dispute in Venver's favor.  *See, e.g., Grindstaff v. Oaks Owners' Assoc., Inc.*, 386 P.3d 1035, 1035 (Okla. Civ. App. 2016) ("A contract is ambiguous when it is fairly susceptible to two different constructions, so that reasonable intelligent [people], on reading the contract, would honestly differ as to its meaning." (citation omitted)).  Resort to extrinsic evidence is proper to resolve an ambiguous contract.  *See Otis Elevator Co.*, 483 F.3d at 1102 (applying Oklahoma law).

For substantially the same reasons set forth in the discussion of the agency relationship between ACT and Venver, the Court finds the intent of the parties was that

13

GEFCO's warranty would be extended to Venver. *See CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2189182 at *4 (W.D. Okla. May 28, 2021) ("The court may interpret an ambiguous contract at the summary judgment stage if the extrinsic evidence presented does not create a genuine dispute of material fact." (citing *Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1045 (N.D. Okla. 2010); *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1214 (10th Cir. 2009)).

The circumstances under which the Contract was made and the matter to which the express warranty relates, i.e., the Rig, make clear that the express warranty was extended by GEFCO to Venver. The undisputed evidence is that Venver negotiated with GEFCO to purchase the Rig for a purchase price in excess of eight million dollars. Venver paid for the Rig by depositing funds with ACT and ACT then served as purchasing agent. ACT did not have any intent to use the Rig in its own business pursuits. It would be absurd for Venver to agree to fund the purchase of an eight-million-dollar rig without the benefit of an express warranty from GEFCO.

Further support for this conclusion exists in relation to the undefined term "PURCHASER."[13] The term PURCHASER is used for the signature line of the Contract. Handwritten next to the term is "M. Forster," one of Venver's three owners, but not an officer or director of ACT. Mr. Forster's signatory capacity is not identified anywhere in the purchase contract. As set forth, the term PURCHASER is also referenced in the express warranty provision. *Id.* at 17. This provision contains the only reference to Venver in the

---

[13] The Court finds significant the fact that "SELLER" is a defined term but "PURCHASER" is an undefined term.

Contract. ACT is referenced in one other place – on the initial page, next to the designation "Company." *Id*. at 2.

Looking at the Contract as a whole, it is not possible to determine the identity of the purchaser from the four corners of the document. On the one hand, the first page of the Contract refers to ACT as "Company." On the other hand, the second page of the Contract is signed by M. Forster as "PURCHASING OFFICER" and the final page of the Contract identifies "PURCHASER" as "M. Forster." Mr. Forster's signature includes no accompanying corporate or other business entity designation. Moreover, both ACT and Venver are referenced in the express warranty provision.

Again, resort to the extrinsic evidence previously addressed makes clear that ACT served as purchasing agent on behalf of Venver. *See White v. Oliver*, 49 P.2d 147, 149-50 (Okla. 1935) ("[W]here the face of the instrument suggests a doubt or ambiguity as to the party bound or the character in which the any person who signed the agreement acted, parol testimony is admissible between the original parties for the purpose of showing the true intent and meaning of the parties as to who was to be bound."). Venver, therefore, is a first PURCHASER to whom the warranty extends. GEFCO's motion for summary judgment on this issue, therefore, is denied.

### C. Motion for Judgment on the Pleadings

In GEFCO's Motion for Judgment on the Pleadings [Doc. No. 147], GEFCO raises essentially the same arguments about the express warranty. GEFCO contends: (1) the express warranty excludes Venver from coverage; (2) Venver is not a third-party

beneficiary to the purchase contract; and (3) Venver's allegations of agency are irrelevant and not well-pleaded.

The issues raised in GEFCO's Motion for Judgment on the Pleadings have been fully addressed in the context of the Court's rulings on the parties' summary judgment submissions. The Court has found Plaintiffs are entitled to partial summary judgment concluding that ACT purchased the Rig as agent for Venver. Additionally, the Court has found GEFCO is not entitled to summary judgment on Plaintiffs' express warranty claim, instead finding the express warranty is extended from GEFCO to Venver. Accordingly, GEFCO's Motion for Judgment on the Pleadings is denied. *See S.E.C. v. Wolfson*, 539 F.3d 1249, 1264–65 (10th Cir.2010) ("Although a motion for judgment on the pleadings can be filed at any time before trial, nothing in the language of the rule implies that the motion must be disposed of prior to other pending motions, including a motion for summary judgment.").

**V.      Conclusion**

IT IS THEREFORE ORDERED as follows:

1)      Plaintiffs' Motion for Partial Summary Judgment as to Venver's Capacity to Sue [Doc. No. 197] is GRANTED;

2)      Defendant's Motion for Summary Judgment [Doc. Nos. 212, 214] is DENIED IN PART[14]; and

---

[14] Defendant's Motion is denied only as to the issue of Venver's express warranty claim [Doc. No. 214] at 20-23. As previously set forth, the Court will address, by separate order, the remaining issues raised in Defendant's Motion and the Motion remains pending as to those issues.

3) Defendant's Motion for Judgment on the Pleadings Regarding Venver's Express Warranty Claim [Doc. No. 147] is DENIED.

IT IS SO ORDERED this 21st day of November, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE